IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEAN-GEORGE SCHWARTZ,

Plaintiff,

vs.                                                                    CIV 09-0265 WDS/RLP

iFREEDOM DIRECT CORPORATION,
f/k/a NEW FREEDOM MORTGAGE COMPANY,
BRENT HANSEN and KEVIN GATES,
Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 33). Plaintiff filed a Response (Doc. No. 35) and Defendants filed a Reply (Doc. No. 36). This is a contract case arising out of Plaintiff's purchase of Defendants' rights under a Deposit Agreement between Defendants and Eclipse Aviation Corporation. Plaintiff asserts claims of fraud in the inducement, negligent misrepresentation, unjust enrichment and rescission. The initial complaint was filed in the Second Judicial District Court, County of Bernalillo, New Mexico. The matter was removed to United States District Court by the Defendants. Plaintiff subsequently filed an amended complaint, which is the subject of this motion for summary judgment.

### STATEMENT OF MATERIAL UNDISPUTED FACTS

The parties have stipulated to the following facts for purposes of this motion:

Plaintiff is the founder of Four Js Development and owns 90% of the company, with his employees owning the other 10%. The company has offices in France, Germany, England, Ireland, Spain, the U.S., Kuala Lumpur, Sydney, Brazil, and Mexico, with a presence in Venezuela. Defendants are managers in a mortgage company called iFreedom Direct Corporation, which was formerly known as New Freedom Mortgage Corporation.

On September 24, 2002, New Freedom Mortgage Corp. ("New Freedom") entered into a deposit agreement with Eclipse Aviation Corporation ("Eclipse"). New Freedom deposited $97,500 with Eclipse to "secure[] a delivery position for one Eclipse 500 jet." The jet had not yet been manufactured. The $97,500 was to be applied to the purchase of an Eclipse 500 jet pursuant to an Eclipse 500 Purchase Agreement. By the end of 2006 the jet had yet to be manufactured or delivered.

In January 2007 Plaintiff contacted Eclipse to obtain information about ordering an Eclipse 500 jet. Plaintiff sent an email inquiry to Greg Oswald, a sales representative for Eclipse, who advised Plaintiff that if he placed a deposit on January 18, 2007, he could expect delivery of an aircraft in the fourth quarter of 2008. Oswald advised Plaintiff that the price of the aircraft at that time was $1,520,000, not including options, but the price would be subject to an inflation adjustment tied into the U.S. Consumer Price Index ("CPI"). The delivery date of fourth quarter 2008 was later than Plaintiff desired.

Prior to or around early January 2007, the managers of New Freedom decided to sell New Freedom's rights under the 2002 Deposit Agreement, and posted an offer to sell with an online website called Controller.com[1]. On January 23, 2007, Plaintiff contacted Defendant Hansen through the Controller.com website to inquire about the terms of purchasing Defendants' Deposit Agreement with Eclipse, so as to assume Defendants' position in the manufacturing queue. On January 24, 2007, Defendant Hansen informed Plaintiff that Defendants would sell their position

---

[1] It appears to the Court that Defendants decided to sell their right to purchase an Eclipse 500 jet because Gates had decided to purchase a jet manufactured by a different company. The exact reason for the decision to sell their rights is of no particular significance to the Court, other than to note that there is no evidence, and no suggestion by Plaintiff, that Defendants decided to sell their rights because they had been advised by Eclipse of a pending price increase for the jet.

for $300,000, which would include their initial $97,500 deposit and a $202,500 premium.

On January 24, 2007, Defendant Hansen emailed Plaintiff and informed him that the price of the aircraft to be delivered by Eclipse was projected to be $1,271,000 (before options), plus an inflation adjustment per the Deposit Agreement, which was tied into the CPI. All representations by Defendant Hansen to Plaintiff, regarding the final price of the aircraft to be manufactured by Eclipse, were made through electronic mail. On January 24, 2007, Defendant Hansen further informed Plaintiff that Eclipse informed him that the "delivery of the plane would be approximately March, 2008." According to Defendant Hansen, this was "a delay of over a year from when [New Freedom] first signed up." At that time, Defendant Hansen stated he "would guess it is fairly realistic."

On January 24, 2007, Defendant Hansen sent an email message to Plaintiff and attached a draft of the Assignment, Consent and Acknowledgment—Deposit Agreement ("Assignment') from Eclipse, as well as an email message showing the cost calculation. On January 25, 2007, Defendant Hansen sent an email message to Plaintiff and attached a copy of the Assignment, Deposit Agreement, an operating cost comparison sheet, and two certificates that New Freedom had received from Eclipse for Plaintiff's review and comment. On January 26, 2007, Plaintiff responded to Defendant Hansen's email message and stated: "After having quickly reviewed your document[2] I saw Chapter 4 section 16 that you can't assign or transfer your Agreement. Could you clarify? Thanks."     On January 26, 2007, Lori Medrano, an attorney with Eclipse, sent an email message to Plaintiff and consented to New Freedom's assignment to Plaintiff. Ms. Medrano also attached a copy of the Assignment to her email message for Plaintiff's review. Ms. Medrano further

---

[2]The "document" referred to by Plaintiff is the Deposit Agreement.

3

explained the process for executing and processing the Assignment.  She informed Plaintiff, "you will become the owner of record and Gates and Hansen will have no further rights or obligations under the Deposit Agreement to that aircraft."

On January 29, 2007, Defendant Hansen sent an email message to Plaintiff regarding the details of signing an escrow agreement. In that message, Defendant Hansen stated "we (Kevin and I on behalf of New Freedom Mortgage) will put the signed assignment into an escrow/trust account."  On that same date, Plaintiff responded: "Your suggestion sounds fine for me."  On January 30, 2009, Defendant Hansen sent Plaintiff the escrow instructions and a signed and notarized copy of the Assignment for Plaintiff's signature.  Defendant Hansen stated: "If you are in agreement, please sign and return both to me." On that same date, Plaintiff responded: "Everything looks fine for me and find attached the signed paperwork back."

Pursuant to the Assignment, Plaintiff accepted New Freedom's "assignment of the Deposit and of the Deposit Agreement."  Plaintiff agreed to "assume[] and become[] solely responsible for all of [New Freedom's] duties and liabilities under the Deposit Agreement and [Plaintiff agreed that he] shall have all of [New Freedom's] rights and interests under the Deposit and the Deposit Agreement, and shall be deemed a party thereto as though [Plaintiff] had originally effected the Deposit and executed the Deposit Agreement."

The Deposit Agreement defines "Final Delivery Price" as "the price to be established six months prior to aircraft delivery that will reflect List Price plus Economic Price Adjustment (EPA) for inflation to the date of delivery and other price adjustments at the discretion of Eclipse."  The Deposit Agreement provided that a buyer could cancel the Deposit Agreement and obtain a refund of the deposit if the Final Delivery Price "exceeds the List Price published in the Eclipse 500 Deposit Program brochure, as adjusted for EPA, by more than 5%."

Some time after the parties executed the assignment agreement, Eclipse exercised its discretionary right under the Deposit Agreement to increase the price of the Eclipse 500 jet by $450,000.00. Eclipse gave Plaintiff the opportunity cancel the Deposit Agreement and obtain a refund of the $97,000.00 deposit. Apparently, Plaintiff elected not to rescind the Deposit Agreement since he believed he would not be made whole. Eclipse ultimately filed for bankruptcy and the jet was never delivered.

## DISPUTED MATERIAL FACTS

In his Response brief Plaintiff disputes only paragraph 17 of Defendant's material facts, which reads as follows: "During his negotiations with Defendant Hansen, Plaintiff knew he was inquiring about a 'right to purchase an aircraft'—not an aircraft." Plaintiff alleges that Defendants "understood that Plaintiff was interested in buying a plane, not simply a *position* to buy a plane," and was buying a spot in line "for the delivery of the plane." Whatever semantic difference Plaintiff is drawing is not relevant to the disposition of this motion. Plaintiff paid Defendants for their spot in the waiting line, and to reimburse them for their deposit paid to Eclipse four and a half years earlier. There is no factual dispute that Plaintiff realized that he ultimately would pay the balance (purchase price less deposit) to Eclipse for the aircraft itself.

## ANALYSIS

As a general rule, summary judgment should be granted where the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bewley v. City of Duncan*, 1998 WL 314382 *3-4 (10th Cir. 1998) (citing Fed.R.Civ.P. 56(c)). A genuine issue of material fact exists if the parties have presented sufficient evidence from which a trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the

non-movant fails to provide sufficient evidence on an essential element of his prima facie case, however, all issues concerning all other elements of the claim become immaterial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, although evidence is viewed and inferences drawn "… in a light most favorable to the party opposing summary judgment ... that party must identify sufficient evidence which would require submission of the case to a jury." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir.1997). Plaintiff's Amended Complaint includes claims for Fraud in the Inducement, Negligent Misrepresentation, Rescission, and Unjust Enrichment. The Court will analyze each of these claims.

### Plaintiff's Claims Of Fraud in the Inducement and Negligent Misrepresentation

Under New Mexico law, the elements for fraudulent inducement are 1) a misrepresentation of fact or failure to disclose a material fact; 2) where the falsity was known to the maker or where the representation or concealment was reckless; 3) the maker acted with the intent to deceive and to induce the other party to act in reliance; and 4) the other party actually relied on the representation or concealment. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 944 (10$_{th}$ Cir. 1999). A material misrepresentation is an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely. UJI 13-1632 NMRA. A negligent misrepresentation is one where the speaker has no reasonable ground for believing that the statement made was true." *Id.*

The heart of Plaintiff's claim is the allegation that "Defendant Hansen was aware that Eclipse could raise its price at any time, but remained silent on this point and did not advise Plaintiff of same." Plaintiff's Response Brief, pg. 2. Plaintiff is referring to the "discretionary" price increases described in the Eclipse deposit agreement, not the cost of living increases. However, it is apparent to the Court that Defendant Hansen *did* advise Plaintiff of that fact by forwarding to Plaintiff a copy

6

of the Deposit Agreement. That agreement references the discretionary price increases in two separate places, and there is no question that Plaintiff received and reviewed the agreement. The Court finds as a matter of law that the possibility of a discretionary price increase by Eclipse was disclosed by Defendant to Plaintiff, without misrepresentation of any kind, be it intentional, reckless, or negligent.

The second issue before the Court is whether Plaintiff can be excused from the consequences of his not having read the Deposit Agreement provided to him by Defendant. Plaintiff acknowledges that the general rule in New Mexico is that a party to a contract has a duty to read the contract before signing it. *Morstad v. Atchison*, 170 P. 886, 889 (N.M. 1918). Plaintiff, however, cites numerous cases in which New Mexico courts have found an exception to the general rule in cases involving negligent misrepresentation or fraud in the inducement. A plaintiff in such cases might not be held to the duty to read a contract if misrepresentations were made in order to induce the plaintiff into signing the contract in the first place. The Court finds these cases distinguishable.

In *Sisneros v. Citadel Broad. Co.*, 140 N.M. 266, 272 (N.M. Ct. App. 2006) the issue was the presence of an arbitration agreement in plaintiff's employment contract. Plaintiff's testimony in that case gave rise to an inference that Citadel knew Plaintiff was unwilling to agree to compulsory arbitration and told Plaintiff the employment agreement had been changed to remove the arbitration provision even though the stated change had not been made. In this case, however, Plaintiff and Defendant did not discuss the contract term at issue, either before or after the execution of the assignment. While Defendant did convey information to Plaintiff regarding a price increase based on cost of living adjustments, none of the statements made by Defendant could be reasonably construed to rule out any other type of price increase, particularly in view of the statements in the deposit agreement.

Nor does this case present a scenario such as in *Pattison v. Ford*, 82 N.M. 605, 606 (N.M. Ct. App. 1971) where plaintiff alleged that he was told a certain price provision was going to be in a contract but the defendant prepared the contract with a different price provision.  In this case, Defendants provided Plaintiff with the "projected aircraft price" for an anticipated delivery date fourteen months in the future.  Defendants obtained the "projected aircraft price" from Eclipse and passed the information directly to Plaintiff, along with a copy of the Deposit Agreement.  Plaintiff has not directed the Court's attention to anything he was told by Defendants that was contrary to the information provided by Eclipse.  The cases noted above are not relevant to consideration of this motion and do not support Plaintiff's argument that he had no duty to read the Deposit Agreement.

Similarly, in *Archuleta v. Kopp*, 90 N.M. 273 (N.M. Ct. App. 1977) there was evidence that the seller of a home knew that the fireplace in the home was defective but failed to reveal that information to a prospective buyer.  Instead, the real estate listing for the house stated "Large den with stone FP."  The court found that the seller could be liable for withholding information about the condition of the fireplace from the buyer.  Absent from this case is any suggestion that the Defendants were aware of the impending $450.000.00 price increase *before* entering into the assignment agreement with Plaintiff.  Nor had Defendants been advised of any information regarding the delivery schedule for the plane contrary to the information they provided to Plaintiff. Defendants were told by Eclipse that the anticipated delivery date was March 2008, a significant delay from the previous estimate of fourth quarter 2006.  Defendants conveyed this information to Plaintiff.  Accordingly, *Archuleta* does not support Plaintiff's position that he had no duty to read the Deposit Agreement.

There is no evidence in this case that any of Defendant's e-mails to Plaintiff contained information that was contrary to the information contained in the Deposit Agreement.  Nor can any

of the e-mails be construed to discourage Plaintiff from reading the Deposit Agreement or to encourage him to disregard information in the Deposit Agreement. To the contrary, Defendants had every reason to believe that Plaintiff had read and reviewed the Deposit Agreement, because Plaintiff e-mailed Defendants with a question regarding the "no assignment" clause in the agreement. Upon receipt of Plaintiff's inquiry about that provision, Defendants immediately contacted Eclipse and had the company confirm in writing that the Deposit Agreement was, in fact, assignable.

The Court finds no basis upon which to excuse Plaintiff from his duty to read the Deposit Agreement. Accordingly, the Court attributes to Plaintiff the information contained in the agreement, including the fact that Eclipse reserved the right to make price adjustments at its discretion. There was no misrepresentation by Defendant regarding this provision, and Defendant complied with his duty to disclose the material terms of the Deposit Agreement by providing a copy of the agreement to Plaintiff. Plaintiff's assertion that Defendant "never once mentioned the fact that the plane's price could be unilaterally increased by Eclipse at any time" is simply untrue. Defendant provided that information to Plaintiff by way of the Deposit Agreement, which Plaintiff had a duty to read.

### Plaintiff's Claims for Rescission and Unjust Enrichment

In the face of a valid contract, "rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." *Hendren v. Allstate Ins. Co.*, 100 N.M. 506, 509, 672 P.2d 1137, 1140 (N.M. Ct. App. 1983). If a material misrepresentation is made or material information withheld, it does not matter whether the culpable party acted fraudulently, negligently, or innocently; rescission may follow. *Id.* As noted above, the Court rejects Plaintiff's argument that he was a victim of

misrepresentation or withholding of facts. Further, the Court does not agree that Eclipse's ultimate failure to deliver the aircraft "goes to the root" of the contract such that it justifies rescission. The assignment agreement between the parties was not for the delivery of an aircraft, it was for a place in line waiting for delivery of an aircraft. It was Eclipse, not Defendants, that ultimately declared bankruptcy and failed to deliver an aircraft. The Defendants' did not breach their obligations under the assignment of rights and the Court sees no basis for rescission of the contract that is at issue in this case.

Similarly, Plaintiff's complaint for unjust enrichment fails. Unjust enrichment is a theory under which an aggrieved party may recover from another party who has profited at the expense of the aggrieved party. In order to state a claim for unjust enrichment, the aggrieved party must allege that (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Heimann v. Kinder-Morgan CO2 Co., L.P.* 140 N.M. 552, 558-559 (N.M. App. 2006). As noted above, it is significant to the Court that there is *no* evidence in this case that Defendants were privy to inside information regarding an impending discretionary price increase or bankruptcy, or inability to deliver an aircraft at any time *before* they assigned their rights under the Deposit Agreement to Plaintiff. As such, it cannot be said that Defendants "knowingly benefitted" at Plaintiff's expense in an unjust manner.

To the contrary, Plaintiff and Defendants, sophisticated businessmen, voluntarily negotiated a contract that was of mutual benefit at the time of execution. The Deposit Agreement made clear that there were a number of "Refund Events" that would entitle a buyer to cancel the agreement and obtain a refund. One such event was the discretionary price increase that ultimately occurred, with or without the subsequent bankruptcy. Other refund events included the aircraft not meeting Guaranteed Performance Specifications, a reduction in standard equipment, or delay in FAA

certification. Plaintiff was aware that Defendants were selling their rights under the Deposit Agreement because the delivery of the plane had been significantly delayed and Defendants did not want to wait any longer. Plaintiff was aware, or reasonably should have been aware, of the possibility that there would be additional delays or price increases that would make it untenable for *him* to either pay for the plane or wait for delivery. Most significantly, Plaintiff was aware, or reasonably should have been aware, that if a refund event occurred, Eclipse would return to him only the $97,500 deposit, not the $202,500.00 premium he had paid to Defendants.

Plaintiff could have negotiated, or at least attempted to negotiate, a provision in the Assignment Agreement to protect him in the event that a refund event occurred. Having made no attempt to negotiate such protection for himself, Plaintiff is now essentially asking the Court to find that Defendants acted unjustly by not volunteering such a provision in the assignment. The Court finds that Defendants had no duty to take such action, were not unjustly enriched, and that there was nothing unjust about the agreement negotiated by the parties[3].

## CONCLUSION

This case involved two sophisticated businessmen negotiating for the right to purchase a private jet for approximately $1.5 million. Defendants had waited in line for the jet for four and a half years, the jet still hadn't been built, and construction was delayed by at least one year. Defendants' willingness to sell Plaintiff their rights under the manufacturer's Deposit Agreement represented a savings to Plaintiff of approximately $300,000.00 on the price of the airplane, and a scheduled delivery date approximately nine months earlier than if Plaintiff had ordered the jet

---

[3]The Court is baffled by Plaintiff's suggestion that, having refused Eclipse's offer to refund his $97,500.00 deposit, he is now entitled to collect that deposit from Defendants on the basis of "unjust enrichment." However, having concluded that Plaintiff's claims are baseless in their entirety, it is not necessary for the Court to address this claim in its particulars.

directly from the manufacturer.  Plaintiff was committing a significant amount of money towards both buying Defendants' rights under the Deposit Agreement and buying the aircraft, and was on notice at the time he made this commitment that the aircraft, a new design, was already delayed by at least a year.  Notwithstanding those facts, Plaintiff's position in this lawsuit was that he had no duty to read the Deposit Agreement that set forth the terms of his investment.  Instead, Plaintiff alleged that the Defendants' had an affirmative legal duty to advise him of his legal rights under the manufacturer's Deposit Agreement.  For the reasons set forth above, the Court concludes that Defendants had no such duty, that Plaintiff was not excused from his responsibility to read the Deposit Agreement before purchasing Defendants' rights under the agreement, and that Plaintiff is not entitled to the equitable relief sought.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 33) is granted, and Plaintiff's cause of action is dismissed with prejudice.

_____
W. Daniel Schneider
UNITED STATES MAGISTRATE JUDGE